**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robin Scoins, et al., | No. CV-05-2933-PHX-FJM |
| Plaintiffs, | **ORDER** |
| vs. | |
| Terry Goddard, et al., | |
| Defendants. | |

    The court has before it defendant Dr. Lauren Bonner's motion for summary judgment (doc. 97), plaintiffs' response (doc. 126), and Bonner's reply (doc. 136); defendants Drs. Gutierrez and Shwer's motion for summary judgment (doc. 100); defendant Southwest Behavioral Health Services, Green, Hrovat and Walker's ("Southwest Behavioral defendants") motion for summary judgment (doc. 115); defendant Banner Health's motion for summary judgment (doc. 117); plaintiffs' Rule 56(f) motion for leave to take depositions and comprehensive status of the case (doc. 128), defendants' responses (doc. 135, 138), and plaintiffs' reply (doc. 151); plaintiffs' motion for extension of time to file a reply in support of its Rule 56(f) motion (doc. 149), and defendants' response (doc. 150); Bonner's motion to strike the affidavit of Robin Scoins (doc. 139), plaintiffs' response (doc. 152), and Bonner's reply (doc. 154); Southwest Behavioral defendants' motion for summary disposition (doc. 158); and Banner Health's motion for summary disposition (doc. 159).

## I. Background

Plaintiff Robin Scoins gave birth to C.Q. at Banner Thunderbird Medical Center on September 27, 2003. On that same day, Scoins underwent a urine drug screen that tested positive for amphetamines, which Scoins claims was a "false positive" test result. On or about November 3, 2003, the State of Arizona Child Protective Services ("CPS") took custody of C.Q. and plaintiff's three other minor children. Plaintiff filed this action on behalf of herself and her four children (collectively referred to as "plaintiff") against the State of Arizona, various healthcare professionals, state employees, and foster parents, alleging, among other things, that the healthcare defendants falsely reported that plaintiff had tested positive for amphetamine use, resulting in plaintiff losing custody of her children temporarily.

The present motions for summary judgment are filed by the healthcare defendants. Defendant Southwest Behavioral Healthcare Services, Inc. ("Southwest Behavioral") is a healthcare provider that operates a clinic where plaintiff received mental health services. Defendants Dr. Lauren Bonner, George Green, Johanna Hrovat, and Brenda Walker are each licensed healthcare providers who are alleged to be either agents or employees of Southwest Behavioral. Dr. Bonner is a psychiatrist who provided mental health services to plaintiff. George Green is the director of Southwest Behavioral. Johanna Hrovat is a licensed therapist who provided healthcare services to plaintiff. Brenda Walker is the case manager that Southwest Behavioral assigned to plaintiff. Defendant Banner Health operates the Banner Thunderbird Medical Center where plaintiff gave birth to C.Q. Defendants Dr. Robert Gutierrez and Dr. Mark Shwer are neonatologists who provided care to C.Q. at the time of his birth.

On May 31, 2006, we entered a Rule 16 scheduling order, establishing an expert witness disclosure deadline of September 1, 2006 (doc. 64). On August 30, 2006, plaintiff filed a motion to extend that deadline. On September 21, 2006, we denied the motion given the longevity of the case and plaintiff's failure to provide good cause to extend the deadlines

1  (doc. 96). Plaintiff disclosed no expert witnesses before the deadline and she is now
2  precluded from doing so.

## **II**. **Rule 56(f) Motion**

4  The healthcare defendants filed the present motions for summary judgment, arguing in part that plaintiff is unable to prove the medical negligence claims against them without the benefit of an expert witness. Plaintiff responded to Dr. Bonner's motion for summary judgment only. In response to the other motions for summary judgment, plaintiff filed a Rule 56(f), Fed. R. Civ. P., motion seeking leave to conduct additional discovery before responding (doc. 149).

10  Rule 56(f) "requires affidavits setting forth the particular facts expected from the movant's discovery, and specifying how those facts would preclude summary judgment." In re Silicon Graphics Litig., 183 F.3d 970, 989 (9th Cir. 1999) (citation and quotation omitted). "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." Id.

15  Plaintiff's motion fails to satisfy the requirements of Rule 56(f). Rather than setting forth particular facts reasonably expected from additional discovery, plaintiff's motion contains a summary of the substantive claims against each defendant. In support of her motion, plaintiff submits her lawyer's affidavit stating that he has had inadequate time to conduct discovery because defense counsel has been uncooperative in scheduling depositions and because of his own agreement to allow plaintiff's deposition to be taken before proceeding with other depositions.

22  Defendants counter that plaintiff has failed to diligently conduct discovery, as evidenced in part by her failure to retain and disclose expert witnesses by the prescribed deadline. They claim that she did not request any depositions or conduct other discovery until after defendants filed their motions for summary judgment. Now she seeks to extend the time to respond to the motions, once again stating that she has had inadequate time to prepare her case.

Plaintiff has been afforded sufficient opportunity to conduct discovery, given that the original complaint was filed in state court on August 15, 2005, the amended complaint was filed on January 24, 2006, and the Rule 26(f) conference occurred prior to May 22, 2006 (docs. 60, 61).  At no time did counsel seek an order compelling discovery.  Moreover, even after the motions for summary judgment were filed, counsel did not seek to depose Drs. Gutierrez, Shwer, and Bonner until well after plaintiff's responses to defendants' motions were due (docs. 119, 120, 121).

In any event, compliance with Rule 56(f) requires more than a perfunctory assertion that the party cannot respond because it needs to conduct discovery.  A Rule 56(f) movant must also detail with particularity the information sought by additional discovery and demonstrate how further specified discovery will defeat the summary judgment motion.  See Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839, 844 (9th Cir. 1994) (holding that a Rule 56(f) motion will be granted only "if the movant diligently pursued its *previous* discovery opportunities, and if the movant can show how allowing *additional* discovery would have precluded summary judgment") (emphasis in original).  Plaintiff has failed to set forth what information is sought by additional discovery or to explain how that information will defeat defendants' motions.[1]  We conclude that plaintiff has not complied with the requirements of Rule 56(f), and accordingly we deny the motion and proceed to the merits of summary judgment.

### III. Motions for Summary Judgment
### A. Medical Negligence

A claim for medical negligence is a statutory action in Arizona pursuant to A.R.S. § 12-561 et seq. (the "Act").  Under the Act, every action for medical negligence must be

---

[1] Although plaintiff asserts in her Rule 56(f) motion that she will offer evidence from a toxicologist or pharmacologist that a urine drug screen is not an appropriate measure to establish amphetamine abuse, Rule 56(f) Motion, at 3, she is precluded from offering such expert testimony given her failure to disclose expert witnesses in accordance with the Rule 16 deadline.

- 4 -

1  proven by showing that "the health care provider failed to exercise that degree of care, skill
2  and learning expected of a reasonable, prudent health care provider in the profession or class
3  to which he belongs," and that "such failure was a proximate cause of the injury." Id. at §
4  12-563.

5  Plaintiff asserts a variety of claims against the healthcare defendants, including
6  negligence, medical negligence, intentional and negligent infliction of emotional distress and
7  breach of fiduciary duty. Defendants argue that these claims are nothing more than an
8  allegation of medical negligence based upon their provision of medical services to plaintiff
9  and that therefore these claims fall within the Act. We agree. "[T]he type of claim asserted
10 does not determine the legal classification." Kenyon v. Hammer, 142 Ariz. 69, 77, 688 P.2d
11 961, 969 (1984). Instead, the key factor in determining whether a claim falls within the Act
12 "is the identity of the person against whom [the claim] is asserted." Id. "Even if not of the
13 true malpractice variety, a claim falls within the statute if it is made against a licensed health
14 care provider and is 'based upon' the defendant's alleged negligent conduct 'in the rendering
15 of health care, medical services . . . or other health related services.' " Id. (quoting A.R.S. §
16 12-561(2)).

17 Here, each defendant is a licensed healthcare provider, whose only alleged contact
18 with plaintiff is through their provision of medical services. Plaintiff claims that the
19 Southwest Behavioral defendants falsely documented in the medical records, and then falsely
20 reported to the State of Arizona that plaintiff tested positive for amphetamines, failed to
21 disclose her pregnancy, and was suspected of drug use. She claims that the Southwest
22 Behavioral defendants knew or should have known that the drug test revealed a false positive
23 for amphetamines.

24 Plaintiff alleges that Banner Health, through its employees, improperly reported that
25 her drug screen was positive for amphetamines, and then refused to correct the medical
26 record upon her request. She claims that Drs. Gutierrez and Shwer, the neonatologists who
27 cared for C.Q., falsely reported in the medical records that plaintiff's drug screen was positive

1  for amphetamines, that she had several surrogate pregnancies, had a history of extreme
2  domestic violence, and was living in a shelter.

3  Each of plaintiff's claims against the healthcare defendants is based on their alleged
4  negligent conduct in rendering health-related services to plaintiff.  Plaintiff's allegations
5  challenge the defendants' professional assessment of the significance of the drug screen and
6  their decisions to record that test result and other information they deemed pertinent in the
7  medical record.  These are professional decisions, based upon the provision of medical
8  services, and as such these are medical negligence claims that fall within the purview of the
9  Act.

10  In order for a plaintiff to prevail on a claim against a healthcare provider under the
11  Act, the plaintiff must have expert testimony to establish her claim.  See A.R.S. § 12-2604
12  (a person shall not give testimony on the appropriate standard of care in a medical
13  malpractice action "unless the person is licensed as a health professional").  It is well
14  established that in a claim of medical negligence, both the standard of care and any deviation
15  from it "must be established by expert medical testimony unless the negligence is so grossly
16  apparent that a layman would have no difficulty in recognizing it."  Harvey v. Kellin, 115
17  Ariz. 496, 499, 566 P.2d 297, 300 (1977).  Accordingly, defendants argue that plaintiff's
18  claims against the healthcare defendants must fail as a matter of law without an expert
19  witness to testify that defendants' conduct fell below an applicable standard of care.  They
20  further contend that plaintiff acknowledged the need for expert testimony to support her
21  claims when she filed a Notice of Compliance with A.R.S. § 12-2603, which avowed that
22  expert opinions were required to substantiate the claims against the various defendant
23  healthcare providers (doc. 35).

**1. Defendant Dr. Bonner**

25  Dr. Bonner provided psychiatric services to plaintiff for approximately six months,
26  ending just before plaintiff gave birth to C. Q.  Five weeks after plaintiff delivered C.Q., CPS
27  contacted Dr. Bonner as part of its investigation into whether C.Q. would be safe in plaintiff's
28  home.  Plaintiff alleges that Dr. Bonner maliciously reported to CPS that plaintiff had not

been truthful during the course of her treatment, intentionally withheld information about her pregnancy, refused to get a pregnancy test, and was suspected of illegal drug use. Plaintiff's Response at 3. She further claims that Dr. Bonner improperly refused her continued treatment. According to plaintiff, Dr. Bonner maliciously conveyed this false information in order to protect her medical license once she discovered that she had been giving a pregnant woman harmful drugs.

A.R.S. §§ 8-805 and 13-3620(J) grant immunity to any person who provides information as part of an investigation into a child's welfare. Malicious intent must be proven in order to defeat the defense of qualified immunity. Id. Plaintiff argues that Dr. Bonner's malicious conduct is evidenced by her motive to portray plaintiff in a negative light in order to protect her medical license. Plaintiff refers to three statements by Dr. Bonner to CPS that plaintiff's failure to disclose her pregnancy "placed the doctor in jeopardy," "put her license at risk," and "put her in a bad position." Plaintiff's SOF ¶ 15. While this may be a motive to provide false information, it does not raise an inference that the information Dr. Bonner provided to CPS was false.

In contrast, Dr. Bonner submits her medical records in support of her statements to CPS, indicating that she believed plaintiff was psychologically impaired and unable to care for her children without assistance as early as March 2003. Bonner SSOF ¶¶ 4, 6. She noted that plaintiff "continues to struggle with parenting issues, even basic parenting skills." Id. ¶ 11. The medical records further establish that Dr. Bonner suspected that plaintiff was "deliberately deceiving the team about her pregnancy status," and that she failed to get a pregnancy test as ordered. Id. ¶¶ 14, 17, 18. The CPS records do not support plaintiff's claim that Dr. Bonner reported that she suspected plaintiff of drug abuse.

Dr. Bonner's assessment of plaintiff's motivation, behaviors, and veracity, as reported in the medical record and to CPS, results from professional medical judgment, the appropriateness of which can only be evaluated through the use of expert testimony. Plaintiff has disclosed no expert witnesses. We conclude that plaintiff has failed to demonstrate an

issue of fact regarding malice or negligence, and accordingly we grant summary judgment in favor of Dr. Bonner (doc. 97).

### 2. Other Healthcare Defendants
### (Banner Health, Southwest Behavioral,
### Green, Hrovat, Walker, Gutierrez, Shwer)

The gravamen of plaintiff's claims against the other healthcare defendants is that they improperly reported that plaintiff tested positive for amphetamines. Plaintiff argues that these defendants were negligent in failing to recognize that this was a false positive test result and in failing to require a second drug screen, known as a gas chromatography/mass spectrometry test, in order to ensure the accuracy of the test before reporting the result in the medical record. But it is not within the common knowledge of a layman that a second, more sophisticated test must be conducted in order to conclusively establish drug abuse. Without expert testimony that it was the standard of care in the medical profession to conduct two drug screens prior to recording any result in the medical record, the jury would have to speculate in order to conclude that defendants' conduct constituted negligence. It can hardly be said that these defendants were so grossly negligent that a layman would have no difficulty recognizing it. We conclude that without expert testimony to establish a breach of defendants' professional standard of care, plaintiff is unable to prove her claims against the healthcare defendants. Accordingly, we grant the defendants' motions for summary judgment on these claims.[2]

### B. Failure to Properly Hire, Train, Supervise

Plaintiff also asserts claims against defendants Banner Health, Southwest Behavioral, Dr. Bonner, and George Green for negligent hiring, training and supervision of the employees that treated plaintiff. In order for an employer to be liable for negligent hiring,

---

[2] These other healthcare defendants also rely on A.R.S. § 8-805(A) to argue that they are immune from civil liability for providing information of suspected abuse to CPS. We agree. Plaintiff has made no showing of malice whatsoever with respect to any of these defendants. Accordingly, they are entitled to qualified immunity regarding the reports they made to CPS.

1  retention or supervision, the employee must have committed a tort. Mulhern v. City of
2  Scottsdale, 165 Ariz. 395, 398, 799 P.2d 15, 18 (Ct. App. 1990).  "If the theory of the
3  employee's underlying tort fails, an employer cannot be negligent as a matter of law for
4  hiring or retaining the employee." Kuehn v. Stanley, 208 Ariz. 124, 130, 91 P.3d 346, 352
5  (Ct. App. 2004).

6      Because the individual healthcare defendants are entitled to summary judgment, so
7  are the entities and individuals that employed them.  Therefore, defendants Banner Health,
8  Southwest Behavioral, Dr. Bonner, and George Green are entitled to summary judgment on
9  plaintiff's claim for negligent hiring, training and supervision.

10  **IV.  Conclusion**

11      Based on the foregoing, **IT IS ORDERED DENYING** plaintiff's Rule 56(f) motion
12  for leave to conduct discovery (doc. 128); **GRANTING** plaintiff's motion for extension of
13  time to file a reply (doc. 149); and **DENYING** Bonner's motion to strike the affidavit of
14  Robin Scoins (doc. 139).

15      **IT IS FURTHER ORDERED GRANTING** Bonner's motion for summary judgment
16  (doc. 97); **GRANTING** Drs. Gutierrez and Shwer's motion for summary judgment (doc.
17  100); **GRANTING** the Southwest Behavioral defendants' motion for summary judgment
18  (doc. 115); and **GRANTING** Banner Health's motion for summary judgment (doc. 117).

19      **IT IS FURTHER ORDERED DENYING** the Southwest Behavioral defendants'
20  motion for summary disposition (doc. 158); and **DENYING** Banner Health's motion for
21  summary disposition (doc. 159).

22      DATED this 5th day of April, 2007.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge