**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robin Scoins, et al., | No. CV-05-2933-PHX-FJM |
| Plaintiffs, | **ORDER** |
| vs. | |
| Terry Goddard, et al., | |
| Defendants. | |

Plaintiff Robin Scoins filed this action on behalf of herself and her four minor children (collectively, "plaintiffs"), asserting claims arising from the temporary custody of the minor children by the State of Arizona. Plaintiffs assert claims against the State of Arizona, Child Protective Services ("CPS") case worker Linda Hodges, CPS case manager Sandra Lopez, CPS supervisor Tracey Everitt, CPS supervisor Nanette Gerber, director of Arizona Department of Economic Security Administration ("DES") David Burns, deputy director of DES Mary Lou Hanley, and state foster parents Donna Drake, Allen Little and Carol Little (collectively, the "state defendants"), as well as various healthcare professionals. On April 6, 2007, we entered an order granting summary judgment in favor of the healthcare defendants (doc. 172).

We now have before us the state defendants' motion for summary judgment (doc. 181), plaintiffs' response (doc. 200), and defendants' reply (doc. 207); plaintiffs' brief on

1 qualified immunity (doc. 211), and defendants' brief on qualified immunity (doc. 212). We
2 also have before us plaintiffs' motion to strike defendants' supplemental authority (doc. 199),
3 and defendants' response (doc. 202). Motions to strike under Rule 12(f), Fed. R. Civ. P. are
4 limited to pleadings under Rule 7(a), Fed. R. Civ. P., in contrast to motions and papers under
5 Rule 7(b), Fed. R. Civ. P.  Because a party's supplemental authority is not a pleading,
6 plaintiffs may not challenge the filing by way of a motion to strike.  Therefore, plaintiffs'
7 motion to strike is denied (doc. 199).

## I. Background

9 Plaintiff Robin Scoins gave birth to CQ at Banner Thunderbird Medical Center on
10 September 27, 2003.  On that same day, Scoins underwent a urine drug screen that tested
11 positive for amphetamines.  Scoins claims this was a "false positive" test result.  The
12 healthcare professionals reported the positive drug test to CPS, and CPS worker Linda
13 Hodges was assigned to investigate.  During the course of the investigation, Hodges learned
14 that Scoins' treating physician, Dr. Laura Bonner, believed that Scoins had hidden her
15 pregnancy from her, and that Scoins placed the unborn baby at risk by continuing to take
16 prescribed medications notwithstanding her pregnancy.  Hodges also learned that other
17 healthcare providers suspected that Scoins may have been using illegal drugs, including
18 methamphetamine, Complaint ¶ 39, that she had a history of extreme domestic violence, and
19 difficulty maintaining stable housing.

20 CQ remained hospitalized for more than a month because of medical conditions
21 resulting from his premature birth.  When he was discharged on November 3, 2003, he
22 remained at high risk and required the highest level of care and supervision. Id. ¶ 57.  Upon
23 his release, CPS filed a notice of temporary custody of CQ. Id. ¶ 58.  On November 6, 2003,
24 CPS filed a petition for dependency with the juvenile court seeking to have all of Scoins'
25 children deemed wards of the State.  As a result, Scoins lost legal custody of all her children
26 and physical custody of CQ.  On December 18, 2003, following two days of testimony, a
27 judge of the Superior Court of Arizona in Maricopa County concluded that the continued
28 temporary custody of the Scoins children was necessary. DSOF, exhibit 2.  CQ was returned

to Scoins on June 16, 2004. She regained legal custody of all of her children on August 17, 2004.

Plaintiffs assert broad allegations against the state defendants collectively, claiming that they "acted with deliberate indifference, malice, reckless disregard, and neglect when they violated CPS's procedures, failed to investigate known discrepancies, took CQ when there was no exigency, made knowing false statements, failed to provide family reunification services and showed an utter and gross dereliction of duties." Response at 1. Specific factual allegations are levied against CPS caseworkers Linda Hodges and Sandra Lopez only.

Plaintiffs assert claims under 42 U.S.C. § 1983, arguing that they were deprived of their due process rights under the Fourteenth Amendment, as well as their right to be free from unreasonable searches and seizures under the Fourth Amendment. They also assert numerous state law claims, including negligence, negligent hiring, training and supervision, intentional and negligent infliction of emotional distress, malicious prosecution, medical malpractice, breach of fiduciary duty, and child abuse and neglect under A.R.S. § 13-3623.

## II. Section 1983 Claims

It is well established that a social worker is entitled to absolute immunity in "performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Doe v. Lebbos, 348 F.3d 820, 826 (9th Cir. 2003) (citing Imbler v. Pachtman, 424 U.S. 409, 431 & n.34, 96 S. Ct. 984, 996 & n.34 (1976)). This immunity exists even in the face of allegations that the social worker failed to investigate possible exculpatory evidence and fabricated evidence in the dependency petitions submitted to the court. Id. To the extent claims against the state defendants are not related to the initiation and pursuit of child dependency proceedings, defendants are eligible for qualified immunity. Id. at 825.

**A. Defendant Linda Hodges**

CPS case worker Linda Hodges was assigned to investigate the report made by the medical professionals that Scoins had tested positive for amphetamines. Plaintiffs claim that Hodges ignored facts and evidence, failed to conduct a thorough investigation, and was grossly negligent and reckless in her investigation. Complaint ¶ 43. They further claim that Hodges created a negative investigation report, dated November 6, 2003, containing "gross falsities" that was given to the Attorney General's office and used to support the dependency petition. PSOF ¶ 97. Specifically, they allege that Hodges falsely stated in her report that Scoins had tested positive for methamphetamines,[1] and that she failed to include exculpatory information. Id. Because the allegations against Hodges relate solely to her role in investigating and pursuing child dependency proceedings, her actions have the "requisite connection to the judicial process" and therefore are protected by absolute immunity. See Lebbos, 348 F.3d at 826. Summary judgment is granted in favor of Hodges on the § 1983 claims.

**B. Defendant Sandra Lopez**

In January 2004, after Hodges completed her investigation, the Scoins case was assigned to Sandra Lopez, an "ongoing case manager." PSOF ¶¶ 19-20. Generally, by the time Lopez receives an asssignment, a case plan is already developed and her job is to implement the plan. PSOF ¶ 19. The Scoins' case plan included the goal of reuniting the family. As an ongoing case manager, Lopez was required to document in her progress reports justifications for maintaining or terminating dependency of a child. PSOF ¶ 29.

Sandra Lopez is absolutely immune for her activities related to the initiation and pursuit of the dependency proceedings. However, to the extent her challenged activities are

---

[1] We note that Hodges explained several times at her deposition that the statement in her report that Scoins "tested positive for methamphetamine," PSOF, exhibit 21, merely repeated information contained in the initial hotline report from the hospital to CPS on September 28, 2003. PSOF, exhibit 4 at 83-85. Plaintiffs' characterization of Hodges' statement as a "lie," see, e.g., Response at 3, is unreasonable and unsupported by the evidence.

- 4 -

1  not functionally similar to prosecutorial or judicial functions, only qualified immunity is
2  available. See Miller v. Gammie, 335 F.3d 889, 898 (9th Cir. 2003).

3  In Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), the Supreme
4  Court established a two-prong analysis for qualified immunity issues. First, we must
5  determine whether the facts alleged, viewed in the light most favorable to the party asserting
6  the injury, show that the state official's conduct violated a constitutional right. If we
7  conclude that the conduct did not violate a constitutional right, the inquiry is over and the
8  official is entitled to qualified immunity. Id. If, on the other hand, we conclude that a
9  constitutional right was violated, we must then determine whether the violated right was
10 "clearly established." Id. Even if a clearly established right is violated, the defendant may
11 nevertheless be entitled to qualified immunity if she can show that her "mistake as to what
12 the law requires is reasonable." Id. at 205, 121 S. Ct. at 2158. The qualified immunity
13 standard "gives ample room for mistaken judgments by protecting all but the plainly
14 incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229,
15 112 S. Ct. 534, 537 (1991) (quotation omitted).

16 Plaintiffs claim that although Sandra Lopez knew that Scoins denied ever using illegal
17 drugs and claimed that the positive drug screen resulted from her use of cold medications,
18 PSOF ¶¶ 37-38, Lopez failed to further investigate these claims. They argue that during the
19 course of the State's custody of the children, Lopez should have taken steps to reunite the
20 family once she became aware that the justification for the dependency was no longer valid.
21 PSOF ¶ 52. However, plaintiffs present no evidence that Lopez ever became aware that the
22 justification for the continued dependency was unsupported.

23 Plaintiffs acknowledge that "[w]hen Sandra Lopez was handling this CPS case it was
24 her belief that Robin Scoins had tested positive for methamphetamine," PSOF ¶ 48, and "[a]t
25 no time did Sandra Lopez ever learn or discover that Robin's blood test taken at Thunderbird
26 was NOT a GCMS test, but was instead just a preliminary screen," PSOF ¶ 50 (emphasis in
27 original). In fact, as of June 10, 2004, at the conclusion of her involvement in the case,
28

"Sandra Lopez still believed that Robin had tested positive for illegal substances when she gave birth to CQ and that the positive test was confirmed by a GCMS test." PSOF ¶¶ 61-62.

Lopez relied on reports made by healthcare professionals regarding a positive drug screen, as well as background information which reasonably called into question Scoins' ability to care for a newborn whose health condition required "the highest level of care and supervision." Complaint ¶ 57. Moreover, by the time Lopez was assigned to the case, the superior court had already determined, after two days of hearings, that the continued temporary custody of the Scoins children was necessary. It is undisputed that throughout her involvement in the case Lopez believed that the underlying justification for the dependency proceedings remained sound. Based on the facts as alleged by plaintiffs, there is no evidence that Lopez's conduct violated a clearly established constitutional right. Therefore, Lopez is entitled to qualified immunity on the § 1983 claims and summary judgment is granted in her favor.

**C. Supervisory Defendants**

All claims asserted against Tracey Everitt, Nanette Gerber, Mary Lou Hanley, David Berns, and the State of Arizona (the "supervisory defendants") arise from their supervisory roles. A supervisor may be liable under § 1983 only if there exists either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). Supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983. Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989). Plaintiffs raise no allegations that these defendants had any direct, personal involvement in this case. Accordingly, we grant the supervisory defendants' motion for summary judgment with respect to plaintiffs' § 1983 claims.

### III. State Law Claims

### A. Notice Requirement

Under A.R.S. § 12-821.01(A), a plaintiff with a claim against a public entity or public employee must first file a notice of claim with the person authorized to accept service on behalf of that entity or employee within 180 days after the cause of action accrues. Compliance with the notice provision is a "mandatory and essential prerequisite," Martineau v. Maricopa County, 207 Ariz. 332, 334, 86 P.3d 912, 914 (Ct. App. 2004), and a plaintiff's failure to comply bars any claim, Falcon v. Maricopa County, 213 Ariz. 525, 527, 144 P.3d 1254, 1256 (2006). The notice requirement serves "to allow the public entity to investigate and assess liability, to permit the possibility of settlement prior to litigation, and to assist the public entity in financial planning and budgeting." Martineau, 207 Ariz. at 335-36, 86 P.2d at 915-16. A notice of claim, therefore, must contain a statement of the facts that supports the basis for liability and include a specific amount for which the claim can be settled. A.R.S. § 12-821.01(A). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements." Falcon, 213 Ariz. at 527, 144 P.3d at 1256. The parties agree that the § 12-821.01(A) time restrictions do not apply to the minor plaintiffs.

CQ was removed from Scoins' custody on November 3, 2003. She lost legal custody of her other three children on or about November 6, 2003.[2] Scoins' causes of action accrued on these dates, and her notices of claim were due no later than May 3, 2004 and May 6, 2004, respectively. Her first notice of claim was submitted on September 9, 2004, well beyond the 180-day deadline. Moreover, this notice wholly fails to comply with the requirement that the claim contain a statement of facts describing the basis for liability and a specific amount for which the claim can be settled. Scoins' more detailed notice of claim filed on December 28,

---

[2]It is not clear precisely when Scoins lost legal custody of her other three children. We do know, however, that the superior court ordered *continued* custody of the children on December 18, 2003. Even if we consider this the accrual date, Scoins' notice falls outside the § 12-821.01 time restrictions.

- 7 -

1 2004, was filed outside the 180-day deadline and will not not satisfy the statutory notice
2 requirement.

3 We reject Scoins' argument that her cause of action did not accrue until CQ was
4 released from the wardship of the court on August 17, 2004. Under § 12-821.01(B), "a cause
5 of action accrues when the damaged party realizes he or she has been damaged and knows
6 or reasonably should know the cause, source, act, event, instrumentality or condition which
7 caused or contributed to the damage." Scoins realized that she had been injured by these
8 defendants as soon as she lost custody of her children. We conclude that Robin Scoins' state
9 law claims are barred for failure to comply with A.R.S. § 12-821.01 and the statute of
10 limitations. Therefore, we will consider the minor plaintiffs' state law claims only.

## B. Defendants Hodges and Lopez

12 CPS workers participating in the investigation of reports of abuse and neglect are
13 immune from civil liability unless they act with malice. A.R.S. § 8-805(A). "Malice" is
14 defined as "a wish to vex, annoy or injure another person, or an intent to do a wrongful act."
15 A.R.S. § 1-215(20).

16 Plaintiffs first argue that malice can be inferred from the Arizona Supreme Court
17 Foster Care Review Board's report, "recommend[ing] that the Court order an investigation
18 into the discrepancies in this case." PSOF, exhibit 13 at 6; Response at 8. Contrary to
19 plaintiffs' argument, this recommendation is not a determination that CPS acted improperly,
20 let alone acted with malice. Rather, the "discrepancies" noted by the Board are Scoins' own
21 disagreements with "allegations . . . result[ing] in the dependency petition . . . , [CQ's]
22 diagnosis, the mother testing positive for methamphetamines, the mother's participation in
23 a case plan staffing in November 2003, and issues regarding the mother's participation in
24 visits." PSOF, exhibit 13 at 6. The Board's recognition of Scoins' allegations and
25 recommendation for further investigation does not constitute a finding of "malice."

26 Plaintiffs also claim that malice can be inferred from the state defendants' statements
27 that Scoins tested positive for methamphetamines when they "knew that this was a . . . lie,"
28 and their "grossly mistaken belief" that CQ tested positive for drugs. Response at 3.

- 8 -

1. However, plaintiffs acknowledge that Sandra Lopez did not know this statement was a lie. PSOF ¶¶ 48, 50, 61.  Moreover, in making her recommendation to the superior court, Linda Hodges relied on the healthcare professionals' report to CPS that Scoins tested positive for amphetamines (also reported by a healthcare professional as methamphetamine).  She also relied on reports from healthcare professionals that Scoins deliberately deceived her physician regarding her pregnancy and failed to get a pregnancy test as ordered, thereby placing her unborn child at risk.  Hodges also relied on information from healthcare professionals indicating a suspicion that Scoins had used illegal drugs, had a history of extreme domestic violence, had been previously homeless, and otherwise had difficulty maintaining a stable home. It was within this context that Hodges was required to determine whether CQ, whose medical condition required "the highest level of care and supervision," was in imminent danger of abuse or neglect. A.R.S. § 8-821.

Even if we assume that Hodges and Lopez had an affirmative duty to further investigate Scoins' claims, to know the original drug screen was unreliable, to order another drug screen, to earlier reunite CQ with his family, this is at most evidence of negligence. There is no evidence that Hodges or Lopez sought to vex, annoy or injure plaintiffs, or otherwise acted with an intent to do a wrongful act.  In other words, there is no evidence of malice.  Accordingly, Hodges and Lopez are immune from the state law claims.

### C. Supervisory Defendants

The theory of state law liability against the supervisory defendants hinges on their supervisory roles; they are not alleged to have had any personal involvement in this case. In order for an employer to be liable for negligent hiring, training or supervision, the employee must have committed a tort. Mulhern v. City of Scottsdale, 165 Ariz. 395, 398, 799 P.2d 15, 18 (Ct. App. 1990). "If the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee." Kuehn v. Stanley, 208 Ariz. 124, 130, 91 P.3d. 346, 352 (Ct. App. 2004);

- 9 -

Because the CPS caseworkers are entitled to summary judgment, so are the entities and individuals that employed them. Therefore, the supervisory defendants are entitled to summary judgment on plaintiffs' state law claims.

### D. Foster Care Defendants

Plaintiffs assert state law claims against foster parents Donna Drake, Allen Little, Carol Little, and the State of Arizona, alleging that while in their care CQ sustained physical and mental abuse and neglect in violation of A.R.S. § 13-3623 ("foster care claim"). The state defendants raised no arguments regarding the foster care claim in their motion for summary judgment. Therefore, the motion is denied as to Donna Drake, Allen Little, Carol Little and the State of Arizona with respect to the foster care claim.

Because we grant summary judgment on all federal claims, we dismiss without prejudice the only remaining state law claim–the foster care claim. See 28 U.S.C. § 1367(c)(3); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).

### IV. Conclusion

Therefore, **IT IS ORDERED GRANTING** defendants' motion for summary judgment in favor of defendants Hodges, Lopez, Everitt, Gerber, Burns, and Hanley on all claims, and **GRANTING** summary judgment in favor of defendant State of Arizona on all claims except the foster care claim (doc. 181). **IT IS FURTHER ORDERED DENYING** the motion for summary judgment regarding the foster care claim, but **DISMISSING** this only remaining claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3) (doc. 181).

**IT IS FURTHER ORDERED DENYING** plaintiffs' motion to strike (doc. 199).

The clerk shall enter final judgment.

DATED this 24th day of September, 2007.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge